IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 13, 2004

## ALBERT YARBROUGH v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26800     Arthur T. Bennett, Judge**

_____

**No. W2004-00867-CCA-R3-PC  - Filed August 13, 2004**

_____

The petitioner, Albert Yarbrough, was convicted by a jury in the Shelby County Criminal Court of rape, a Class B felony. The trial court sentenced the petitioner as a violent offender to fourteen years in the Tennessee Department of Correction. Following an unsuccessful appeal of his conviction, the petitioner filed a petition for post-conviction relief, alleging, among other grounds, ineffective assistance of counsel. The post-conviction court denied the petition, finding the petition to be barred by the statute of limitations and the petitioner's allegations to be without merit. The petitioner now brings this appeal challenging the denial of his petition for relief. Upon review of the record and the parties' briefs, we conclude that the petitioner timely filed his petition for post-conviction relief. However, we affirm the post-conviction court's denial of the petition on the merits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Albert Yarbrough.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee Coffee, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The petitioner was convicted by a jury of rape and sentenced as a violent offender to fourteen years incarceration. The petitioner subsequently filed a direct appeal challenging the sufficiency of the evidence. On April 12, 2002, this court affirmed the conviction. State v. Albert Yarbrough, No. W2001-01150-CCA-R3-CD, 2002 WL 1732337 (Tenn. Crim. App. at Jackson, Apr. 12, 2002). On September 30, 2002, the petitioner filed a pro se petition for post-conviction relief. The post-

conviction court appointed counsel, and an amended petition was filed, alleging ineffective assistance of counsel at trial. On September 18, 2003, the post-conviction court held an evidentiary hearing at which the petitioner, his trial counsel, and a fellow inmate testified.

At the evidentiary hearing, trial counsel testified that she was licensed to practice law in 1987 and was employed by the public defender's office for fifteen years. She related that she had previously tried approximately fifty criminal cases. Trial counsel testified that upon being appointed to represent the petitioner, she filed the appropriate motions, including a motion for discovery and a motion to suppress the victim's out of court identification. Additionally, she filed the proper responses to the State's motions and challenged the chain of custody of the petitioner's DNA sample. Trial counsel testified that she spent twenty to thirty hours preparing for the petitioner's trial, not including three days of trial and several hearings on sentencing. Moreover, trial was reset numerous times while the parties awaited the results of DNA analysis.

Trial counsel testified that the petitioner was in custody when she was first appointed to represent him; however, he was subsequently released on bond. Trial counsel related that she did not learn that the petitioner had been released on bond until a subsequent court date. Trial counsel visited the petitioner in jail on three occasions and also talked with him at court appearances. She explained that once the petitioner was released on bond, it was his responsibility to contact her for appointments. According to trial counsel, the petitioner never came to the public defender's office and telephoned only twice. Nevertheless, trial counsel related that her visits with the petitioner were productive. Trial counsel stated, "We talked about the DNA at length . . . [and] I gave him copies of the DNA report and [other discovery materials]."

Trial counsel conceded that neither she nor the investigator from the public defender's office interviewed the victim in the instant case. However, trial counsel stated that she learned of the victim's allegations through the affidavit of complaint, discovery materials, and testimony at the suppression hearing. Moreover, prior to trial, the State allowed trial counsel to review and take notes from the victim's statement. Trial counsel maintained that she was not surprised by any of the victim's testimony and she questioned the victim regarding the "number of inconsistencies" in her testimony.

Regarding the theory of defense, trial counsel testified that the petitioner maintained his innocence throughout the trial process, claiming that he had never seen the victim. The petitioner provided trial counsel with the names of alibi witnesses, and trial counsel and the investigator contacted these witnesses. Trial counsel subsequently learned that the results of DNA analysis of semen found on the victim matched the petitioner's DNA. Trial counsel explained to the petitioner that based upon the DNA results, an alibi defense would not likely be successful. Nevertheless, the petitioner insisted on going to trial. However, prior to trial, the petitioner decided not to present the testimony of the alibi witnesses. At trial, counsel vigorously challenged the chain of custody of the petitioner's blood samples in an attempt to attack the reliability of the DNA analysis. Trial counsel testified that because the petitioner denied having sex with the victim, she did not pursue the defense of consent. She further explained that the defense of consent would not have been successful

because the victim had been beaten during the rape, resulting in the loss of teeth and bruising about the face.

When asked if she had questioned the victim on cross-examination about being a prostitute, trial counsel replied that she asked the victim about her employment. The victim responded that she was unemployed. Trial counsel then asked the victim why she was out late at night, and the victim responded that she had been to a party. Trial counsel testified that unless the victim had admitted she was a prostitute, there was no way to prove it.

Trial counsel testified that in November of 2000, the State offered the petitioner a sentence of eight years. In light of the DNA results and the victim's identification of the petitioner, trial counsel believed eight years was "a great offer." Trial counsel informed the petitioner of the State's offer two weeks later, at which time she also provided him with copies of the DNA results and discovery materials and discussed the contents of the victim's statement. Trial counsel advised the petitioner of the State's evidence, including the DNA results and the victim's identification of the petitioner. She further explained that rape was a violent offense for which the petitioner could receive a sentence of twelve to twenty years with no possibility of parole. The petitioner refused to accept the State's offer.

Trial counsel testified that the State's offer of eight years was available until jury selection. Once the jury was selected, the trial court voir dired the petitioner about his refusal to accept the plea offer. Trial counsel stated that the petitioner knowingly, intelligently, and voluntarily rejected the State's offer, explaining that she and the petitioner had discussed the offer several times and the petitioner was well-advised of the facts of the case. Moreover, the petitioner had prior convictions and was familiar with the criminal justice system. According to trial counsel, the petitioner was confident that a jury would not believe the victim. "[The petitioner] was adamant from day one that he did not do this and he wanted a trial."

Donald Watkins testified that he was an inmate in the Tennessee Department of Correction, serving sentences for drug convictions and violating the Motor Vehicle Habitual Offender's Act. Prior to incarceration, Watkins had lived in Memphis where he sold drugs. Watkins related that he had known the petitioner for approximately five years and he and the petitioner were currently incarcerated at the same facility. Watkins testified that prior to the petitioner's trial, the petitioner informed him that he had been charged with raping the victim. Watkins told the petitioner that he had previously sold cocaine to the victim and the victim had offered sex in exchange for drugs. Watkins testified that he would have testified to these facts at the petitioner's trial, but he was never contacted by anyone from the public defender's office. On cross-examination, Watkins conceded that he had never seen a picture of the victim.

At the evidentiary hearing, the petitioner testified that trial counsel failed to provide adequate representation. According to the petitioner, trial counsel failed to consult with him and failed to file the proper motions. The petitioner claimed that trial counsel should have filed a motion to hire a DNA expert to refute the testimony of the State's DNA expert. The petitioner further claimed that

-3-

he did not receive the results of the DNA analysis until the day of trial. The petitioner conceded that he never informed anyone about the ineffectiveness of trial counsel, but claimed that he did not know who to contact.

The petitioner testified that trial counsel advised him that rape was a Class B felony for which he could receive a sentence of twenty to thirty years incarceration without the possibility of parole. He further acknowledged that trial counsel advised him that his prior convictions could be used to enhance his sentence. The petitioner stated that on the day of trial, counsel provided him with the results of the DNA analysis. The petitioner claimed that at that time he believed that the State's offer was twenty years. He denied that counsel informed him prior to trial of the State's offer of eight years incarceration. According to the petitioner, "[h]alfway through trial she asked me why wouldn't I take the eight. And I asked her what eight?" The petitioner stated that he might have accepted the State's offer of eight years, but he did not have adequate time to consider the offer. The petitioner claimed that he did not know that he could have pled guilty in the middle of trial.

The petitioner further testified that trial counsel did not present an adequate defense. The petitioner acknowledged that he told trial counsel that he did not rape the victim. Nevertheless, the petitioner claimed that upon receiving the DNA results, trial counsel should have insisted upon pursuing a defense of consent. However, the petitioner conceded that he never informed her that he had consensual sex with the victim. He claimed that because trial counsel believed he was guilty, it would not have made a difference. Moreover, he did not want his family to learn of the extramarital affair. The petitioner explained that he had known the victim prior to the alleged rape and she had previously performed oral sex on him.

The petitioner testified that trial counsel visited him several times in jail and they met once in the courtroom. He acknowledged that he provided trial counsel with the names of alibi witnesses, but subsequently decided not to call them to testify. He explained that he did not want them to provide false testimony. On cross-examination, the petitioner conceded that he had previously been convicted of two misdemeanors and seven felonies, including burglary, sexual offenses, assault with intent to commit murder, robbery, and aggravated kidnapping.

At the conclusion of the testimony, the post-conviction court denied the petition for post-conviction relief. Specifically, the post-conviction court found that the petitioner had been untruthful in his petition and in his testimony. The post-conviction court found that trial counsel was effective and vigorously represented the petitioner at trial, stating, "[she] put forth the best defense she could based on the factual situation that she had to deal with. She did everything that a lawyer could have done under the facts of your case." Thereafter, the post-conviction court entered written findings of facts and conclusions of law, finding the petition to be barred by the statute of limitations and the petitioner's allegations to be without merit. The petitioner now brings this appeal challenging the denial of his petition for post-conviction relief.

## II. Analysis

### A. Statute of Limitations

Tennessee Code Annotated section 40-30-102(a) (2003) provides in pertinent part that

> a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred.

As the State concedes, the post-conviction court erred by finding that the instant petition was time-barred. In its findings of fact, the post-conviction court stated that the petitioner was convicted on March 21, 2001, but did not file his petition for post-conviction relief until September 30, 2002, more than one year after the judgment became final. However, the petitioner filed a direct appeal to this court. Thus, the judgment did not become final until this court affirmed the petitioner's conviction on April 12, 2002. Accordingly, the petitioner timely filed for post-conviction relief.

### B. Ineffective Assistance of Counsel

In a post-conviction proceeding, the petitioner bears the burden of proving the grounds raised in the petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Questions regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court as the trier of fact. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

On appeal, a claim of ineffective assistance of counsel presents a mixed question of law and fact subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). As such, the post-conviction court's findings of fact are entitled to a presumption of correctness unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, a post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are subject to a purely de novo review with no presumption of correctness. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient

and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Id. at 370.

To establish constitutionally deficient performance, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064; Burns, 6 S.W.3d at 462. Specifically, the petitioner must show that counsel's performance was not within "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068; see also Dean v. State, 59 S.W.3d 663, 667 (Tenn. 2001).

On appeal, the petitioner alleges numerous instances of ineffective assistance of trial counsel. The petitioner contends that trial counsel failed to interview the victim or other witnesses, made no effort to suppress the victim's out of court identification of the petitioner, failed to prepare the petitioner for trial, failed to inform the petitioner of the futility of an alibi defense, failed to present the testimony of Donald Watkins who would have testified that the victim was a cocaine-addicted prostitute, and failed to adequately prepare for trial. The petitioner argues that cumulatively these deficiencies gave rise to a reasonable probability that, but for trial counsel's errors, the result of the proceeding would have been different. We find the petitioner's allegations to be without merit.

As previously noted, the post-conviction court found that trial counsel was effective and vigorously represented the petitioner at trial, stating that trial counsel had "put forth the best defense she could based on the factual situation she had to deal with." The post-conviction court obviously accredited the testimony of trial counsel. The record does not preponderate against those findings.

### III. Conclusion

Accordingly, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE